Weston G. STRAUCH, Plaintiff–Appellee Cross–Appellant,

v.

The GATES RUBBER COMPANY, Defendant–Appellant Cross–Appellee.

No. 88–3373.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1989.

Craig R. Nelson, Sarah A. Lowman, New Orleans, for defendant-appellant cross-appellee.

Leila Erato, Harold B. Carter, Jr., Richard E. McCormack, New Orleans, for plaintiff-appellee cross-appellant.

Before GEE, GARZA and JONES, Circuit Judges.

GARZA, Circuit Judge:

In this products liability case, defendant urges that the evidence was insufficient to find that its anhydrous ammonia hose was unreasonably dangerous or that the alleged defect in the product was a proximate cause of plaintiff's injuries. Plaintiff cross appeals from the jury's finding of 60% comparative fault and from the trial court's dismissal of his claim for exemplary damages under La. Civ.Code art. 2315.3. Because we find sufficient evidence to support all aspects of the jury's verdict and because we find, as well, that the district court properly dismissed plaintiff's claim for exemplary damages, we AFFIRM.

Plaintiff Weston Strauch is president of Refrigeration Equipment Company, which is engaged in the business of selling small quantities of anhydrous ammonia to some of its customers. From a large storage tank at its shop, plaintiff transfers the liquid ammonia to its customers' small canisters through a synthetic hose designed and manufactured by defendant Gates

Rubber Company ("Gates"). The hose that is the subject of this lawsuit was purchased by plaintiff in September of 1980 from Gulf Belting and Gasket Company, a Gates distributor. It was accompanied by no notice that its useful life was limited to thirty months.

On the morning of June 28, 1985, Eugene Smith, a Refrigeration Equipment employee, was filling canisters with ammonia. At one point during the filling process, Smith's attention was diverted by a fellow employee. When he returned to his task, he realized that he had neglected to open a valve leading to the customer's canister. The resulting build-up of pressure caused the hose to burst, permitting ammonia to escape. According to expert testimony, the stress on the hose never surpassed its designated working pressure.

Weston Strauch was walking to work that morning when he noticed a commotion in front of his office. He ran to the shop, ascertained what had happened, donned a gas mask and ran into the cloud of ammonia to reach the main tank valve. He succeeded in shutting down the flow of ammonia but sustained chemical burns on his legs, chest and arms in the process. He sued Gates on January 21, 1986 seeking compensatory and exemplary damages. His claim for exemplary damages was based on La. Civ.Code art. 2315.3 and upon an allegation that Gates was guilty of reckless and wanton disregard for public safety in the handling and transportation of a hazardous material.

The trial court granted Gates's partial motion to dismiss on the issue of exemplary damages. The remaining claims in the case were submitted to a jury, which found that the Gates hose was unreasonably dangerous because it carried no warning of its limited useful life. The jury also found that the failure to warn was a proximate cause of plaintiff's injuries. The jury then apportioned the fault for Mr. Strauch's injuries, assessing Gates and Refrigeration Equipment 20% each and finding Mr. Strauch 60% contributorily negligent. Plaintiff's injuries were valued at $15,000 plus $3,009.14 for medical expenses, the costs of which were apportioned according to each party's percentage of fault. Both parties appeal.

## Discussion

Defendant Gates disputes the jury finding that it was even partially to blame for plaintiff's injuries. Gates points to evidence it claims is in the record to the effect that the employees of Refrigeration Equipment improperly subjected the hose to kinking, that they failed to protect the hose from excessive pressure and that they used the product in conjunction with improper couplings and valves, all in contravention to the instructions and warnings supplied by Gates to Refrigeration Equipment.

Gates argues further that Strauch and his employees were sophisticated users of ammonia hoses and that they knew or should have known that their abuse of the hose, over time, might cause it to rupture. According to defendant, the combined negligence of both plaintiff and Eugene Smith were the sole cause of Mr. Strauch's injuries thus requiring that recovery against Gates, under Louisiana comparative fault principles, be reduced to zero.

Finally, Gates urges that the district court properly dismissed plaintiff's claim for exemplary damages. Louisiana statute permits recovery of exemplary damages "if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." La. Civ.Code art. 2315.3. The trial court found that Gates neither stored, handled nor transported the ammonia that injured the plaintiff.

The gravamen of plaintiff's argument is that sufficient evidence was presented at trial for the jury to conclude that Gates's failure to warn Refrigeration Equipment of the limited safe and useful life of the hose rendered the product unreasonably dangerous. He also urges that there was sufficient evidence for the jury to find that Gates's failure to warn was a proximate cause of Strauch's injuries.

In addition, plaintiff assigns error to the trial court's reduction of his damage award

through the apportionment of 60% fault to Strauch and 20% fault to Refrigeration Equipment. He argues that Louisiana's comparative fault doctrine does not apply to a strict product liability case such as this one.

Plaintiff also argues that the district court improperly granted defendant's partial motion to dismiss on the issue of exemplary damages. Plaintiff claims that art. 2315.3, and the cases construing it, subjects a manufacturer, seller, purchaser or transporter of a mechanism intended to be used in conjunction with a hazardous substance, who recklessly or wantonly exposes the public to danger by ignoring a known defect in the product or mechanism, to liability for exemplary damages. Strauch urges that it was error for the district court to dismiss this aspect of his claim because his complaint sufficiently alleged conduct on the part of Gates which would permit a jury to award exemplary damages. We address first defendant's, then plaintiff's, arguments on appeal.

## I.

▮▮▮ Gates's first assignment of error alleges that there was insufficient evidence presented at trial that its anhydrous ammonia hose was defective.[1] For purposes of review, we treat this issue as an appeal from a denial of a motion for judgment notwithstanding the verdict. On a motion for judgment n.o.v., a reviewing court will consider all of the evidence in the light, and with all reasonable inferences, most favorable to the non-moving party. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). An appellate Court is in no position to weigh conflicting evidence and inferences or to determine the credibility of witnesses; that function is within the province of the finder of fact. *Id.* at 374.

▮▮▮ The jury found that the Gates Rubber anhydrous ammonia hose was defective because Gates knew of a particular danger associated with the use of its hose but failed to warn of this danger. Specifically, plaintiff/appellee proved to the jury that Gates failed to warn Refrigeration Equipment that its product had an average service life of thirty months. Mr. Johnny Rodriguez and Mr. Louis Nesser worked for Gulf Belting and Gasket Company, a distributor of Gates's anhydrous ammonia hose. Mr. Rodriguez testified at trial that, although there existed Gates Rubber catalogues on Gulf Belting premises, these catalogues were not given to customers as a matter of course or routine. Mr. Nesser testified that he never received any notice from Gates indicating that the company was placing a thirty-month warning on its anhydrous ammonia hose.

Gates points out that Mr. Rodriguez also testified that the catalogues were available at all times and that Mr. Strauch never requested any copies of them. Mr. Nesser stated his opinion at trial that he did not consider the Gates ammonia hose dangerous in normal use. Appellee urges that this evidence makes it plain that Weston Strauch received "information and catalogues detailing proper use and maintenance of the subject hose."

Even assuming that it was incumbent upon plaintiff to request a copy of the literature that should have been supplied along with Gates's product—a dubious proposition at best—this evidence can only be characterized as conflicting with other evidence elicited from this witness; the jury was free to believe any part of Mr. Rodriguez's testimony that it found credible. Furthermore, we fail to see how Mr. Nesser's opinion as to the dangers associated with normal use of the Gates ammonia hose was relevant to the issue whether Gates failed to warn that its product had a serviceable life of thirty months. Once again, we will not disturb a jury verdict based upon the weight of conflicting evidence.

Gates further argues that Weston Strauch was a sophisticated user of anhydrous ammonia hose whose knowledge absolved Gates Rubber of the duty to warn

---

1. Gates moved for a directed verdict at the close of plaintiff's case-in-chief on April 27, 1988. This motion was granted in part and denied in part, leaving for the jury the question whether Gates's hose was defective due to the company's alleged failure to warn.

him of the dangers related to extended use of the product. The cases Gates cites do not assist this Court in determining the precise question here and we find the "sophisticated-user" defense unconvincing.

Gates cites *American Mutual Liability Ins. Co. v. Firestone Tire and Rubber Co.,* 799 F.2d 993 (5th Cir.1986) for the proposition that the general rule regarding the obligation of a manufacturer to warn of the limitations associated with its product " 'is without application in those instances wherein the party either knows or should know of the limitations and restricted capabilities of the article.' " *Id.* at 994 (quoting *West v. Hydro–Test, Inc.,* 196 So.2d 598 (La.App.1967)). In the *American Mutual* case, the plaintiff was injured when he overinflated one of defendant's agricultural tires. There, however, the manufacturer's warning against overinflation had been torn off of the product by one of plaintiff's fellow employees; thus, it was not the case that the defendant had failed altogether to warn of a known hazard. In addition, evidence presented at trial in *American Mutual* revealed that the plaintiff had previously mounted hundreds of agricultural tires that warned against overinflation. Here, there was no undisputed evidence that anyone at Refrigeration Equipment had ever been warned that Gates's anhydrous ammonia hose had a service life of thirty months.

In *Bradco Oil & Gas Co. v. Youngstown Sheet and Tube Co.,* 532 F.2d 501 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977), also cited for support by Gates, an oil well that had been drilled by Bradco had to be abandoned when a section of underground metal tubing manufactured by Youngstown fractured at a depth of 1500 feet. The evidence at trial revealed that the presence of hydrogen sulfide ("$H_2S$") at the well-site had embrittled the tubing. Bradco argued that Youngstown had a duty to warn the purchasers of its product that the tubing could be dangerous when used in wells containing even trace amounts of $H_2S$. However, it was established at trial that the hazards of $H_2S$ embrittlement were widely known in the industry and that it

was even common practice for drilling companies to utilize a "smell test" for the detection of $H_2S$ odor at a well site. This Court declined to require Youngstown to warn the oil industry that the smell test was an inadequate means to assure safe use of its product in a known hazardous environment.

The case at bar is quite different from *Bradco.* The hazard associated with use of the product in *Bradco* was widely known and understood in the industry as a whole and by the plaintiff in particular. The relevant hazard associated with the anhydrous ammonia hose in the case at bar was its use for a longer period of time than thirty months. Although, as Gates points out, any knowledgeable user of its hose would understand that the product could not be used forever, thirty months is a considerably shorter time than forever. Nothing in the record indicates that even a sophisticated user of anhydrous ammonia hose would know, without having received Gates's warning, that it should be replaced after thirty months.

With respect to Gates's argument that the jury erred in concluding that the failure to warn was a proximate cause of plaintiff's injuries, there was expert testimony presented at trial that, at the time of the accident, the hose was not subjected to stress over and above the manufacturer's recommended working pressure. It was reasonable for the jury to conclude from this evidence that the hose failed on June 28, 1985 because it had been in service longer than its useful life and that defendant's failure to warn of its product's truncated serviceable life was a proximate cause of its failure.

II.

We turn now to the issues presented in plaintiff's cross appeal. Weston Strauch argues that the special jury verdict form impermissibly allowed the apportionment of fault for this accident among Gates, Refrigeration Equipment and Mr. Strauch himself. Plaintiff cites *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985) for support.

In the *Bell* case, the Louisiana Supreme Court answered in the negative a question certified by this Court inquiring whether the Louisiana Civil Code permits the defense of contributory negligence to be advanced in a strict products liability case. However, the supreme court concluded that, in an appropriate case, "comparative fault principles would seem to coincide with and further the goals of products liability doctrine." *Id.* at 171.

. As plaintiff points out, the court stated that an appropriate case is one where:

[T]he threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests.... The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safe product.

*Id.* at 171–72.

The court explicitly declined to provide "an answer to all questions that may be expected to arise" in products liability cases, leaving to the trial judge " 'broad discretion in adopting such procedures as may accomplish the objectives and purposes expressed in this opinion.' " *Id.* at 173 (quoting *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 390, 575 P.2d 1162, 1172 (1978)).

■ Weston Strauch testified at trial that his company, Refrigeration Equipment, was not in compliance with Occupational Safety and Health Administration requirements for the safe handling of anhydrous ammonia. Indeed, he expressed contempt for that agency and its regulations. We think it reasonable for the judge to have concluded that the injuries suffered by Mr. Strauch might have been avoided altogether had he brought his company into compliance with federal law prior to the date of this accident. One might hope that the reduction in his recovery, in accordance with the jury's assessment of his degree of fault, might provide the incentive for him to handle his anhydrous ammonia and the products associated with it more carefully in the future. In any event, we hold that the trial court did not erroneously submit the issue of comparative fault to the jury.

■ Plaintiff asserts that the trial court erroneously dismissed his claim for exemplary damages under La.Civ.Code art. 2315.3. This issue requires of us, as it did of the trial court, an inquiry into the applicability of art. 2315.3 to the activities of Gates Rubber.

Article 2315.3 provides:

In addition to general and special damages, exemplary damages may be awarded if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances.

The trial court granted Gates's partial motion to dismiss on the issue of exemplary damages. For that order of dismissal to be appropriate, it must appear beyond doubt that plaintiff can prove no set of facts that would entitle him to the relief granted by art. 2315.3. *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir.1985), *cert. denied*, 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985).

Gates argues that art. 2315.3 requires a defendant to be "engaged in" the storage, handling or transportation of a hazardous substance before its activities come within the purview of the statute. Strauch urges that it is sufficient if the defendant's activities merely "relate to" such storage, handling or transportation. We think it clear that plaintiff's interpretation of art. 2315.3 reaches too far. Under plaintiff's view of the statute, for instance, the transportation of water to cool the fuel rods of a nuclear power plant "relates to" the storage, handling or transportation of a hazardous substance. However, we would have no difficulty, under such circumstances, concluding that no set of facts could be proved that would entitle a plaintiff to exemplary damages as against the transporter of water used to cool the fuel rods of a nuclear power plant. Water simply is not a hazard-

ous substance under art. 2315.3 even though its transportation might "relate to" the handling of another substance considered hazardous.

The hazardous substance in question here is anhydrous ammonia. Article 2315.-3, by its terms, requires that Strauch's injuries must result from Gates's wanton disregard for public safety in storing, handling or transporting anhydrous ammonia. The best that can be said for plaintiff is that Gates manufactures an instrumentality by which *others* might store, handle or transport anhydrous ammonia. Gates itself, however, engages in none of those three activities. Whether it is ever appropriate to assess exemplary damages against the manufacturer of material that is used for the storage, handling or transportation of hazardous substances for the dangerous or reckless design of its product is a question not now before us. But if such relief is to be granted, it must have as its source some statute other than art. 2315.3.

For the foregoing reasons, we AFFIRM in all respects the decision reached below.