Gene KING, et al.

v.

E.I. DU PONT DE NEMOURS, et al.

Civ. A. No. 91–2051–M.

United States District Court,
W.D. Louisiana,
Monroe Division.

April 29, 1994.

504

J. Michael Hart, Theus Grisham Davis & Leigh, Monroe, LA, for plaintiffs Gene King, dba AGM Miniature Roses Inc. and Melanie King.

W. Michael Adams, J. David Garrett, Donald J. Armand, Jr., Joseph C. Wiley, Blanchard Walker O'Quin & Roberts, Shreveport, LA, for defendants E.I. Du Pont de Nemours & Co. and Plate Chemical Co.

Donald J. Anzelmo, Crawford & Anzelmo, Monroe, LA, for defendant Terra Intern.

### RULING

NAUMAN S. SCOTT, District Judge.

Before the court is a Motion for Partial Summary Judgment filed on behalf of defendants E.I. Du Pont de Nemours and Company (Du Pont), Platte Chemical Company (Platte) and Terra International, Inc. (Terra). Defendants urge the court to render partial summary judgment dismissing plaintiffs', Gene King d/b/a A.G.M. Miniature Roses, Inc. and Melanie King, claims for exemplary damages as set forth in Count IV (erroneously entitled Count III and hereinafter referred to as Count IV) of the First Amended Complaint and Count V of the Second Amended Complaint (erroneously entitled Count IV and hereinafter referred to as Count V).

### I. Factual and Procedural Background

Plaintiffs operate a miniature rose nursery. They allege that a Du Pont fungicide, Benlate DF 50 (Benlate),[1] caused severe damage to their 1989 stock of plants, including many of the "mother plants" used to propagate and continue their inventory of roses. Plaintiffs fault defendants for allowing Benlate to become contaminated with the herbicide atrazine and other harmful substances, improperly labelling the product, and packaging Benlate in such a manner that it would decompose and form harmful chemicals. Plaintiffs also allege claims of misrepresentation against Du Pont and Terra and seek exemplary damages under such claims.[2] Plaintiffs further seek exemplary damages pursuant to Louisiana Civil Code article 2315.3.

### II. Law and Analysis

■ Louisiana law is well settled on the point that exemplary (punitive) damages may not be imposed unless expressly authorized by statute. *International Harvester Credit Corp. v. Seale,* 518 So.2d 1039, 1041 (La. 1988). Moreover, statutes authorizing the imposition of exemplary damages must be strictly construed. *Id.; see also Vincent v. Southwest Louisiana Elec. Membership Corp.,* 666 F.Supp. 94, 96 (W.D.La.1987). Accordingly, defendants seek to dismiss plaintiffs' claims for exemplary damages under the misrepresentation causes of action and article 2315.3.

### A. Misrepresentation

■ In Count IV of the First Amended Complaint, which sets forth claims of misrepresentation aimed at Du Pont and Terra, plaintiffs vaguely state that

the actions giving rise to the misrepresentation and detrimental reliance of complainants herein occurred in states other than the State of Louisiana and, pursuant to the Louisiana Civil Code, complainants would be entitled to exemplary damages where it is shown that such action took place in a state allowing for exemplary damages, to-wit, Texas and/or Delaware,

---

1. Although Benlate is sold and distributed under the Du Pont name, plaintiffs allege that Terra manufactured "at least a portion" of the product, Original Compl. at para. 5, and "the chemical sold by Du Pont and used by complainant was formulated by Platte Chemical Company from chemicals either produced by Platte Chemical Company or used in conjunction with chemicals

formulated by defendant, Terra International." Second Am.Compl. at 21.

2. We dismissed plaintiffs' misrepresentation claim against Platte in our Ruling dated November 18, 1993.

or such other states as may be shown to be applicable to the actions of defendants herein.

First Am.Compl. at para. 31. While we find it difficult to extract any definite meaning from such obtuse verbiage, it is clear why plaintiffs seek the application of the law of a state other than Louisiana to their misrepresentation claims. As noted above, Louisiana prohibits recovery of exemplary damages in the absence of an express statutory provision. Because no such statute exists, plaintiffs cannot recover exemplary damages under their misrepresentation claims if Louisiana law applies.

Defendants set forth an excellent exposition of Louisiana's conflicts law and make a cogent argument as to why Louisiana choice of law principles mandate application of Louisiana law to plaintiffs' misrepresentation claims and the concomitant damages issue.[3] Plaintiffs apparently recognize the soundness of defendants' position, as their opposition fails to mention the issue of the availability of exemplary damages under their misrepresentation claims. In light of defendants persuasive conflicts of law analysis and the lack of opposition thereto, we find it unnecessary to set forth an in-depth conflicts analysis. Instead, it suffices to say that we find that Louisiana law applies to plaintiffs' misrepresentation claims and the concomitant issue of the availability of exemplary damages. Because no Louisiana statute provides for recovery of exemplary damages under a claim for misrepresentation, we must grant defendants' Motion for Partial Summary Judgment on this issue.

**B. Article 2315.3**

In Count V of their Second Amended Complaint, plaintiffs set forth a claim for exemplary damages under Louisiana Civil Code article 2315.3. Article 2315.3 provides:

In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.

La.Civ.Code art. 2315.3. Plaintiffs allege that "the Benlate product, as contaminated or from the contents of its active ingredients, is a hazardous substance" and the damage to their miniature rose nursery "resulted from the defendants' wanton or reckless disregard for public safety in the handling of the hazardous substances." Second Am.Compl. at para. 33 and 34.

Defendants challenge the applicability of article 2315.3 to the facts of this case on two grounds. First, defendants assert that "courts have generally ruled that the hazardous materials which allegedly cause a plaintiff's injuries must have been within the possession or control of the defendant *at the time of the injury* in order for exemplary damages to be recoverable from the defendant." Mem. in Supp. of Mot. for Summ. J. at 11–12 (citing *Strauch v. Gates Rubber Co.,* 879 F.2d 1282 (5th Cir.1989), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990); *Galjour v. General American Tank Car Corp.,* 769 F.Supp. 953 (E.D.La.1991); *Wiltz v. Mobil Oil Exploration and Producing North America Inc.,* 702 F.Supp. 607 (W.D.La.1989) (emphasis added)).[4] The cases cited by defendants do provide that in order for article 2315.3 to be applicable, the defendant must have been in possession and control of the hazardous substance prior to the time plaintiff sustained his injury. *Galjour,* 769 F.Supp. at 956; *Wiltz,* 702 F.Supp. at 608. Indeed, this very court held in *Wiltz* that "[i]mplicit in storing, handling or transporting is the requirement that the hazardous substance be in the possession or control of a person who then handles or otherwise deals with that substance." 702 F.Supp. at 608. No court, however, has stretched this implicit requirement as far as defendants

---

3. When sitting in diversity, we must, of course, apply the conflicts law of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

4. Since none of the cases cited support this contention, we feel that defense counsel have come dangerously close to pushing their position past the point of supported argument and into the chasm of misrepresentation to the court.

contend; that is, to the point where the defendant must be in possession and control of the hazardous substance at the time of plaintiff's injury.

In *Wiltz*, plaintiffs performing workover operations at an oil well cite were injured during a flash fire. 702 F.Supp. at 607. "The accident was caused by emissions from the well, of naturally occurring gas from an underground formation, which had never been reduced to possession by [defendant]." *Id.* at 608. Because defendant never gained possession of a hazardous substance (gas), it "could not be said to have been storing, handling or transporting the gas." Accordingly, we found that article 2315.3 did not apply to plaintiffs' claims. *Id.*

Clearly, our holding is quite different than defendants' representation—i.e., an implicit requirement that defendant be in possession and control of the hazardous substance at the time of plaintiff's injury. Moreover, the other cases cited by defendants for this proposition, *Strauch* and *Galjour*, do not hold as defendants say they do. Indeed, the court in *Galjour* quoted directly from our holding in *Wiltz*, 769 F.Supp. at 956, and the Fifth Circuit in *Strauch* did not squarely address the implicit requirement of possession and control over the hazardous substance.

The court in *Strauch* dealt instead with the broad question of who might be subject to the exemplary damage provisions of article 2315.3. The court held that only those "engaged in" the storing, handling or transporting of hazardous substances fall within the reach of article 2315.3. *Strauch*, 879 F.2d at 1287–88. The court found that the manufacturer of a synthetic hose used by others to store, handle and transport anhydrous ammonia, a hazardous substance, did not itself engage in any of the three activities listed in article 2315.3. *Id.* at 1288.[5] Accordingly, the court affirmed the district court's dismissal of the exemplary damage claims filed against defendant under article 2315.3. *Id.*

Hence, *Strauch* focused on the issue presented here in the defendants' second challenge to the applicability of article 2315.3. That is, are the defendants in this case among those who fall within the purview of article 2315.3? *Strauch* instructs us to answer this question by determining whether defendants "engage in" storage, handling, or transportation of hazardous substances.

Defendants ignore this clear Fifth Circuit guidance and urge us to adopt a broad rule barring the application of article 2315.3 to manufacturers of hazardous substances. In support of this position, defendants rely exclusively on the pre-*Strauch* opinion of *Williams v. A.C. & S., Inc.*, 700 F.Supp. 309 (M.D.La.1988). There, plaintiff, who was employed in occupations which required him to handle asbestos products, sued several asbestos manufacturers. Plaintiff contended that the manufacturers' asbestos products irreparably damaged his lungs and sought compensatory damages and exemplary damages under article 2315.3. *Id.* at 310. The court granted defendants' motion for summary judgment, which sought to dismiss plaintiff's claims on the grounds that article 2315.3 did not apply to them. The court noted that "[p]laintiff does not allege he was injured as a result of the defendants' 'storage, handling, or transportation' of asbestos. Defendants' fault, if any, arises from the manufacture, design, and labelling of the products—conduct which, although within the realm of products liability, lies outside the scope of article 2315.3." *Id.*

We are in agreement with the opinion in *Williams* to the extent that it dismissed plaintiff's claims because he did not allege injury resulting from the storage, handling, or transportation of hazardous or toxic substances. Indeed, the clear language of article 2315.3 compels dismissal of claims for exemplary damages against defendants who are not engaged in any of these three activities.

Defendants mischaracterize the second sentence of *Williams* quoted above in an

---

5. The court left open the issue of "[w]hether it is ever appropriate to assess exemplary damages against the manufacturer of material that is used for the storage, handling or transportation of hazardous substances for the dangerous or reckless design of its product." *Strauch*, 879 F.2d at 1288.

effort to support their contention that manufacturers are not subject to article 2315.3.[6] They portray this sentence as "the *Williams* court's conclusion that manufacturers are beyond the scope of" article 2315.3. Reply Mem. in Supp. of Mot. for Summ.J. at 5. The court in *Williams* did not hold so broadly. Instead, the court simply held that a defendant's manufacturing, designing, and labelling activities are not within the reach of article 2315.3. That is not to say, however, that one engaged in these activities—i.e., a manufacturer—could not also engage in the three article 2315.3 activities. Indeed, such may be the case in the instant lawsuit.

As we indicated before, we are well aware that statutes authorizing the imposition of exemplary damages must be strictly construed. *International Harvester Credit Corp. v. Seale*, 518 So.2d at 1041; *see also Vincent*, 666 F.Supp. at 96. In line with this principal of strict statutory construction, we similarly refuse to read any restrictions or exceptions into a statute beyond its plain meaning. *See* La.C.C. art. 9, 11.[7] Therefore, we reject defendants' argument that there exists a broad shield protecting manufacturers from the reach of article 2315.3.

▇ In light of the foregoing and because we find that there are outstanding genuine issues of material facts as to whether defendants were engaged in the storage, handling or transportation of hazardous or toxic substances, we must deny defendants Motion for Partial Summary Judgment on this issue.

Accordingly, defendants' Motion for Partial Summary Judgment on the issue of the availability of exemplary damages under plaintiffs' misrepresentation claims is hereby **GRANTED** and defendants' Motion for Partial Summary Judgment on the issue of the

applicability of Louisiana Civil Code article 2315.3 is hereby **DENIED.**

DONE AND SIGNED.

---

6. We need not engage in an analysis of whether this sentence constitutes the holding of the court or merely dicta, an issue receiving much attention by the parties.

7. This statement should not be read to be inapposite to our holding in *Wiltz*, where we found that defendant "was not engaged in storing, handling or treating hazardous or toxic substances. Im-

plicit in storing, handling or transporting is the requirement that the hazardous substance be in the possession and control of a person who then handles or otherwise deals with that substance." 702 F.Supp. at 608. Determining the meaning of words used in a statute is quite different, of course, from adding restrictions beyond the face of the statute.