|rAMY, Judge,
dissenting.
I respectfully dissent from the majority’s determination that a reversal is required. Although I do not find merit in either argument advanced by the plaintiffs, I turn first to the question of whether punitive damages are available against the defendants through La.Civ.Code art. 2324. At the time the alleged injuries were sustained, the punitive damages article under which the plaintiffs are attempting to recover, La.Civ.Code art. 2315.3, provided:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that the plaintiffs injuries were caused by the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.
Insofar as the allegation of conspiracy is concerned, La.Civ.Code art. 2324(A) provides: “He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.”
|aAs noted by the majority, the question in this case is not whether genuine issues of material fact exist, as it is in most summary judgment cases, but whether the facts, as alleged, permit recovery of punitive damages against these defendants. I conclude that they do not.
Simply put, the plaintiffs alleged that the non-employer defendants participated in a conspiracy to conceal the hazards of exposure to vinyl chloride. Under this theory, the plaintiffs argue, it does not matter if these defendants did not themselves, store, handle, or transport the vinyl chloride, and therefore did not fit under the punitive damages article due to their own action/inaction. Rather, the plaintiffs suggest that these defendants stored, handled, or transported the vinyl chloride, because their co-conspirators, the employer defendants, did so. In their brief to this court, the plaintiffs assert: “As such, since one co-conspirator handled the vinyl chloride that injured plaintiffs, all co-conspirators are deemed to have ‘handled’ said vinyl chloride. Therefore, ah co-conspirators are deemed as one and fall under the punitive damage statute.” Thus, the plaintiffs envision recovery due to a confluence of Articles 2315.3 and 2324.
This case is clearly not one questioning whether compensatory damages may be recovered from co-conspirators. Both Article 2324 and the related jurisprudence are very plain on this point. Neither is it a question of whether these defendants actually participated in a conspiracy as alleged by the plaintiffs. That is, of course, a fact bound question left for further proceedings. Rather, the question is whether, even assuming the allegations of conspiracy are proven, can conspiracy, alone, be a sufficient route for recovery of punitive damages under Article 2315.3.
Although both the defendants and the plaintiffs assert that jurisprudence favors their respective positions, my review of the jurisprudence reveals little guidance in lathis area. In Rivera v. United Gas Pipeline, Co., 96-502, 96-503, 97-161 (La.App. 5 Cir. 6/30/97); 697 So.2d 327, writs de *369 nied, 97-2030 (La. 12/12/97); 704 So.2d 1196, 97-2031, 97-2032, 97-2034 (La.12/12/97); 704 So.2d 1197, a case referenced by the plaintiffs, the fifth circuit affirmed a determination that a principal could be held vicariously liable for punitive damages for an act of its agent. The court stated:
It seems to us that to hold that the negligence of an agent cannot be imputed to the principal in awarding punitive damages would have the effect of virtually eliminating punitive damages awards. Likewise, in order to avoid punitive damages liability, a corporation would simply have to create a separate entity to perform the hazardous activities, thus insulating itself from punitive liability. To allow punitive liability to be so easily sidestepped runs counter to the legislature’s public policy concerns in imposing punitive damages in certain enumerated situations. As such, we find that negligence for punitive damages, like any other type of negligence, may be imputed to a principal through the acts of an agent.
Id. at p. 10; 336. I find that the instant case, involving liability due to an alleged conspiracy, is distinguishable from the principal/agent relationship described in Rivera. Here, the legislative policies advanced by Article 2315.3 cannot be “sidestepped” as pointed out by the fifth circuit. Instead, the actor whose actions fall directly under the article, that is the actor who stores, handles, or transports the hazardous substance, may clearly be found to be subject to the exemplary damages.
Having reviewed the wording of Article 2324, and bearing in mind the strict construction applicable to penal provisions, it is my view that the exemplary damages available under Article 2315.3 cannot be extended to those who are subject to liability for compensatory damages under the conspiracy article alone. In this determination, I focus on the express language of Article 2324(A). That article provides that a conspirator is liable “for the damage caused by such act.” (Emphasis added.) It is incorrect to assert that punitive damages are damages caused by a conspiracy to commit an intentional/willful act. Punitive damages are not caused at all; rather, |4punitive damages are a penalty imposed in accord with a legislative determination to punish particular conduct. It is compensatory damages that, by their nature, are clearly seen as those “caused by such act.” Although the plaintiffs may be correct in their assertion that “the only way to adequately protect the public interest is to punish all of those legally responsible, which would include co-conspirators[,]” the limiting language of Article 2324 indicates that it is a policy not adopted by the legislature.
In addition to the wording of the article, a panel of this court addressed a similar issue in Bourque v. Bailey, 93-1657 (La. App. 3 Cir. 9/21/94); 643 So.2d 236, writ denied, 94-2619 (La.12/16/94); 648 So.2d 392. In Bourque, the court determined that punitive damages available under La. Civ.Code art. 2315.4, which permits the recovery of punitive damages against an intoxicated driver, were recoverable only from the intoxicated driver and his legal representatives, and not against those who were liable in solido, as contributors to the accident. The court reasoned:
Bearing in mind the nature of exemplary damages, International Harvester Credit [, 518 So.2d 1039 (La.1988)], supra, and that LSA-C.C. art. 2315.4 is designed to penalize an intoxicated tortfea-sor, not to compensate injured plaintiffs, we hold that those whose conduct is not directly targeted by LSA-C.C. art. 2315.4 cannot be bound by LSA-C.C. art. 2324 to shoulder that responsibility. Stated differently, we hold that, directly *370 or indirectly, only the intoxicated driver, his insurer and legal representatives — in other words, those affiliated with the party targeted by the punitive provi- . sions of LSA-C.C. art. 2315.4 — may be assessed with punitive damages under that provision. A contrary conclusion would be analogous to finding a liability insurer liable in solido with its insured beyond its policy limits, something which is verboten. See generally Fertitta v. Allstate Ins. Co., 462 So.2d 159, 162, n. 4, and accompanying text (La.1985).
Id. at p. 8-9; 241. Although the discussion in Bourque was targeted to the relationship described in La.Civ.Code art. 2324(B), not for the conspiracy relationship described in Article 2324(A) and that at issue in this case, I find the ^reasoning similar. Accordingly, I find this legal issue properly resolved in favor of the defendants.
Alternatively, and in their second assignment of error, the plaintiffs contend that the non-employer defendants “handled” vinyl chloride in their own right. Again, I conclude that this assertion is meritless. The plaintiffs argue:
[E]ven without the conspiracy, these defendants handled vinyl chloride under article 2315.3. To hold that defendants must physically handle the particular vinyl chloride that injured plaintiffs is [an] improper definition for handling under article 2315.3. Defendants issued incomplete and inaccurate warnings concerning vinyl chloride. They attempted to “defocus” the cancer causing nature of vinyl chloride. They signed secrecy agreements concerning the health effects of vinyl chloride. All of these actions amount' to handling, transportation, and storage of vinyl chloride. Warnings, research, safety, and other aspects which defendants improperly influenced were an integral part of handling, • storage, and transportation. Thus, even without the conspiracy, these defendants handled the vinyl chloride that injured plaintiff through actions and inactions meant to conceal the health effects of vinyl chloride.
With regard to the badge manufacturing defendant, the plaintiffs contend that the defendant was aware that the badges were defective and that the defective monitoring “clearly constitutes handling, storage, and transportation of vinyl chloride.”
Consideration of the motions for summary judgment in this case do not so much involve questions of fact, but, instead, this court has been asked to consider whether, even viewing the plaintiffs allegations as true, this type of action by the non-employer defendant can be construed as storage, handling, or transportation under Article 2315.3. The petitions instituting these matters reveal the plaintiffs have primarily argued that the non-employer defendants are responsible for punitive damages due to the alleged conspiracy, not their own actions. After referencing specific portions of the petitions, the plaintiffs write in their reply brief that: “Plaintiffs have specifically stated that the intentional and/or willful acts constituted |fia wanton or reckless disregard for public safety in the storage, handling, and/or transportation of hazardous substances and that all co-conspirators are liable.” The plaintiffs argue that:
Thus, plaintiffs have clearly alleged a relationship between employer and no-nemployer defendants in the handling, storage, and transportation of vinyl chloride at issue. The degree of involvement and the extent of that conspiracy is a question of fact. It is not something that should be decided by the trial court on summary judgment, and that is not what was decided. Thus, defendants are incorrect in their citation of the allegations in this case. The allegations clearly state a conspiracy to mishandle ■ the hazardous materials that injured plaintiffs under art. 2324 and 2315.3.
*371 While it may be true that this was alleged, the facts alleged in the petition focus on the alleged conspiracy and not on direct actions/inactions regarding the subject vinyl chloride as it might directly relate to the plaintiffs. Simply asserting that these facts reveal storage, handling, or transport does not make it so. There are no actions/inactions alleged to be by these defendants that can be seen as qualitatively sufficient to satisfy the storage, handling, or transportation element of Article 2315.3.
In commenting on the storing, handling, or transporting requirement of the article, the fourth circuit has reasoned:
“[IJmplicit in storing, handling or transporting is the requirement that the hazardous substance be in the possession or control of a person who then handles or otherwise deals with that substance.” Wiltz v. Mobil Oil Exploration and Producing, N.A., Inc., 702 F.Supp. 607, 608 (W.D.La.1989). However, no requirement that the defendant be in possession and control of the hazardous substance at the time of the plaintiffs injury exists. King v. E.I. Du Pont de Nemours, 850 F.Supp. 503 (W.D.La.1994). The statute, since it imposes a penalty, must be strictly construed. Chustz v. J.B. Hunt Transport, Inc., 95-0356 (La.11/6/95), 662 So.2d 450.
In re New Orleans Train Car Leakage, 95-2710, 95-2721, 96-0016, 95-2734, 95-2811, 96-0017, 95-2797, 96-0015, p. 7 (La.App. 4 Cir. 3/20/96); 671 So.2d 540, 546-47, writs denied, 96-0972, 96-0984 (La.6/28/96); 675 So.2d 1120, writs denied, 96-1287,7 96-1311, 96-0977, 96-0978 (La.6/28/96); 675 So.2d 1121, cert. denied, 519 U.S. 1009, 117 S.Ct. 512, 136 L.Ed.2d 402 (1996).
None of the allegations contained in the pleadings demonstrate that these non-employer defendants were in a position to exercise the type of control or possession of the vinyl chloride as required by Article 2315.3. Instead, the allegations point to distant and general conduct unrelated to possession or control of this vinyl chloride. Neither do I find that any of the plaintiffs’ attachments filed in opposition to the motion for summary judgment indicate that there are genuine issues of material fact related to the storage, handling, or transportation of vinyl chloride. At most, these documents may be useful in the plaintiffs’ case in chief with regard to whether a conspiracy exists. Again, a question that remains and will be settled another day. In sum, my opinion is that, even if all facts are construed in favor of the plaintiffs’ position, recovery of punitive damages is not available against these defendants. This is a legal determination, as, even if all allegations made by the plaintiffs regarding the non-employer defendants’ actions could be proven at a later date, the alleged conduct could not satisfy the elements of La.Civ.Code art. 2315.3. Accordingly, I find no merit in this argument.
For the foregoing reasons, I dissent.