Charles E. HALLIBURTON, Plaintiff-Appellant,

v.

OCEAN DRILLING & EXPLORATION COMPANY et al., Defendants-Appellees.

No. 78-3227.

United States Court of Appeals, Fifth Circuit.

July 3, 1980.

Kenneth M. Henke, Lafayette, La., for plaintiff-appellant.

Lemle, Kelleher, Kohlmeyer & Matthews, James H. Daigle, New Orleans, La., for Ocean Drilling.

Sessions, Fishman, Rosenson, Etc., Walter C. Thompson, Jr., Harry L. Shoemaker, III, New Orleans, La., for Kilroy Co. of Texas.

Before AINSWORTH and CHARLES CLARK, Circuit Judges, and HUNTER,* District Judge.

PER CURIAM:

In this seaman's personal injury case, the District Court held that there existed no genuine issue of material fact with respect to the validity of the release executed by the plaintiff and granted summary judgment to the defendants. We reverse.

■ Releases signed by seamen, the "wards of admiralty," are given the most careful scrutiny. The burden is on the shipowner to show that the seaman signed the release with a full understanding of his rights and the effect of his action. *See Garrett v. Moore-McCormack Co.*, 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; *Aguiluz-Nunez v. Carnival Cruise Lines, Inc.*, 584 F.2d 76 (5th Cir. 1978). On a motion for summary judgment based on a seaman's release, the shipowner has an even heavier burden to shoulder, for he must conclusively demonstrate the absence of genuine issues of material fact. F.R.Civ.P. 56(c).

The record reveals that Halliburton had been on a course of therapy which required Phenaphen, Valium and Dalmane. The affidavit of Dr. Morgan, a noted pharmacologist and acting Chairman of the Louisiana State University School of Medicine, was filed in opposition to the motion. Addressing himself to the above noted drugs, Dr. Morgan stated:

"These drugs, when ingested concomitantly, have a potentiating, or greatly increased effect upon the patients' mental faculties, which the drugs, if ingested alone, would not have;"

And, referring to the two drugs taken by plaintiff-appellant *that morning*:

"A patient who has been on a course of therapy consisting of these drugs and who, on a particular day has ingested four capsules of *Phenaphen No. 3* and two 5 milligram tablets of *Valium* would more than likely have impaired or diminished mental capacity to fully understand and appreciate any actions requiring the patient to be fully alert and attentive to details, or which require the patient to engage in any complicated thought processes wherein he must make any more than the simplest routine judgments and certainly this would include the ability to understand, assess and fully appreciate the terms, results, and effects of a release of any claim involving the patient."

Dr. Morgan was called as a witness by defendants at the hearing, and when questioned about the effects of the three drugs, reaffirmed his opinion:

"Q. But some persons might react to this combination of drugs—

A. Some people—excuse me. Most adults taking that combination would require going to bed. I mean, their mental activity would be decreased where they couldn't function."

Defendants' contention that the release was valid is premised on the verbal transcript of the settlement meeting and Halliburton's statements on that occasion that he knew what he was doing. If Halliburton was in fact suffering from diminished mental capacity, it is doubtful whether these statements prove anything. Then, too, there is a serious conflict of evidence concerning the alleged threats to reduce Halliburton's maintenance and cure payments and to drag the case out for several years. It is noted that Halliburton was not represented by counsel at the time of the settlement.

■ We are quite sure that plaintiff's submission created genuine issues of material fact. Therefore, the judgment of the District Court is REVERSED and the case is REMANDED to that Court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

* District Judge of the Western District of Louisiana, sitting by designation.