**Michael C. PETTY, Plaintiff,**

v.

**ODYSSEA VESSELS, INC., Odyssea Marine, Inc., Odyssea Marine Group, L.L.C., Horizon Offshore, Inc., Horizon Offshore Contractors, Inc. and Horizon Vessels, Inc. Defendants.**

**No. CIV.A G–00–046.**

United States District Court, S.D. Texas, Galveston Division.

Oct. 11, 2000.

Francis I. Spagnoletti, Spagnoletti & Assoc, Houston, TX, for Michael C. Petty, plaintiffs.

James Richard Watkins, Royston Rayzor, Galveston, TX, for Odyssea Vessels Inc., Odyssea Marine Inc., Odyssea Marine Group LLC, Inc., Horizon Offshore Contractors Inc., Horizon Vessels Inc., defendants.

### ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Michael C. Petty brings this action for personal injuries arising under the Jones Act and general maritime law. Now before the Court is Defendants' Motion for Summary Judgment. For the reasons stated below, Defendants' Motion for Summary Judgment is **DENIED.**

### I.  FACTUAL SUMMARY

On January 11, 1999, Plaintiff was serving as Chief Engineer aboard the M/V MISS JESSICA in waters off of Galveston, Texas. A fire broke out aboard the vessel that day, and while fighting the fire Plaintiff is alleged to have suffered damage to his lungs, along with subsequent Post Traumatic Stress Disorder. Following the accident, Defendants began paying Plaintiff maintenance and cure benefits. After some eight months, however, Defendants offered Plaintiff a settlement, whereby maintenance and cure would end and Plaintiff would release Defendants from liability for all claims stemming from the incident aboard the M/V MISS JESSICA. On July 27, 1999, Defendants flew Plaintiff to Houston, Texas in order to review settlement documentation before Defendants' attorneys. Plaintiff was not represented by counsel at this meeting. While in Houston, Plaintiff executed a Receipt, Release of All Claims, and Indemnity Agreement ("Release") purporting to put this matter to rest for all parties. Now before the Court is Defendants' Motion for Summary Judgment asserting that they are entitled to judgment as a matter of law based upon the Release signed by Plaintiff. In response, Plaintiff has argued that Defendant cannot carry its summary judgment burden in that: (1) Plaintiff lacked the mental capacity to enter into a valid agreement; and (2) Defendants overreached and coerced Plaintiff into signing the Release.

### II.  ANALYSIS

#### A.  *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they

require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.;see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 693 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

**B.** *The Release*

▆▆ "Releases signed by seamen, the 'wards of admiralty' are given the most careful scrutiny." *Halliburton v. Ocean Drilling & Exploration Co.,* 620 F.2d 444, 445 (5th Cir.1980); *accord Simpson v. Lykes Bros., Inc.,* 22 F.3d 601, 602 (5th Cir.1994). Therefore, Defendants must carry the burden of demonstrating that the Plaintiff seaman fully understood both his rights and the consequences of his action in signing the Release. *See Halliburton,* 620 F.2d at 445; *Borne v. A & P Boat Rentals No. 4, Inc.* 780 F.2d 1254, 1256 (5th Cir.1986). Several factors are relevant to the Court's appraisal of Plaintiff's understanding of his rights, including: (1) the nature of the legal advice available to the seaman when signing the release; (2) the adequacy of consideration; (3) the existence of arm's length negotiation; and (4) the appearance of fraud or coercion. *See Simpson,* 22 F.3d at 602. Additionally, the ability of seaman to understand his rights and the consequences of his actions may be called into question if the seaman lacked the requisite mental capacity when signing the release. *See id.; Halliburton,* 620 F.2d at 445. As with any other summary judgment, the moving party, here Defendants, must demonstrate the absence of genuine issues of material fact. *See* Fed.R.Civ.P. 56(c); *Halliburton,* 620 F.2d at 445. Moreover, the Defendants must shoulder a particularly heavy burden when Defendants move for summary judgment based upon a seaman's release. *See Halliburton,* 620 F.2d at 445.

Generally speaking, the courts are receptive to a defendant's motion for summary judgment based upon a release signed in exchange for consideration. *See Borne,* 780 F.2d at 1257. For if "employers are denied any degree of confidence in the finality of a settlement ... employers will have little incentive to avoid a full-scale trial on the merits." *Id.* Thus, in protecting its wards of admiralty the Court takes notice of the fact that it should not be unduly protective of a seaman who

has signed a release fully comprehending the nature of his actions. Normally, even if a release may have been improvidently signed the Court would hold a plaintiff to the terms of the agreement. *See Borne,* 780 F.2d at 1258 (holding that a settlement will not be set aside when, there being no question of competence, a seaman acts upon independent advice, following a reasonable investigation); *Stipelcovich v. Sand Dollar Marine, Inc.,* 805 F.2d 599, 606 (5th Cir.1986) (holding that consideration received by the seaman is not the "ultimate concern" in determining the validity of a release); *Wilson v. Western Oceanic, Inc.,* 540 F.Supp. 228, 231 (S.D.Tex.1982) (noting that a release will not be set aside "merely because plaintiff received considerably less ... than ... hoped."). However, exceptional circumstances may require the Court to take a deeper and more searching look at an otherwise valid looking release. *See Castillo,* 937 F.2d at 246. If a genuine issue of material fact exists regarding the validity of a release, then a seaman is entitled to a factual determination of this issue. *See Castillo v. Spiliada Maritime Corp.,* 937 F.2d 240, 245 (5th Cir.1991).

The arguments advanced by Plaintiff regarding the alleged invalidity of this Release agreement may be grouped into two loose categories: (1) those suggesting fraud, coercion or overreaching; and (2) those suggesting that Plaintiff lacked the mental capacity to execute a valid seaman's release.

■ Several facts alleged by Plaintiff may establish possible coercion. First, Plaintiff, in his sworn affidavit, states that in June 1999 his employer stopped paying for maintenance and medical treatment. A defendant's decision to terminate maintenance and cure benefits could be considered as coercive by the fact finder. *See Halliburton,* 620 F.2d at 445. Defendants strongly refute this point with their own affidavit and copies of checks allegedly sent to Plaintiff. Undeniably, however, the status of these payments in June 1999 is in dispute. Plaintiff also stated that he was told the only way he could receive further help was to settle his claims, and that after traveling to Houston, Texas to discuss settlement was informed that he would only receive a return ticket home if he agreed to a settlement. Defendants disagree with Plaintiff's affidavit and point to his inconsistent testimony given while reviewing the settlement documents. Again, however, this presents the Court with a fact question that cannot be resolved at this juncture. Also supporting Plaintiff's coercion claim, is the fact that Plaintiff was unrepresented by counsel. The Court recognizes that a party may choose to proceed without the advice of a lawyer, but this fact nevertheless aids Plaintiff's factual contention that he failed to understand his rights. *See Castillo,* 937 F.2d at 246 n. 7 (emphasizing the importance of a seaman's legal representation). Plaintiff also testified on July 27, 1999 that he was settling because he was scared, seemingly in part because he felt his friends had suffered harassment stemming from his injury situation, and Plaintiff hoped that settling would stop the perceived harassment. In light of Plaintiff's evidence, the Court concludes that a fact issue exists regarding whether or not Defendants overreached and coerced Plaintiff into settling.

Numerous facts also suggest that Plaintiff may have lacked the mental capacity to sign the Release documents. Plaintiff contends that he was taking multiple prescription medications when he signed the Release, and that Defendants were aware of this. Charles B. Cover, M.D., Plaintiff's current treating psychiatrist stated by affidavit that, within a reasonable medical probability, any one of Plaintiff's prescriptions would have been sufficient to impair Plaintiff's mental ability.[1] Defendants ob-

---

1. While the basis of the Doctor's testimony is not entirely clear from his affidavit, Plaintiff himself testified on July 27, 1999 that he had taken Xanax on that date, and the clear im-

port of the Doctor's statement is that Xanax alone would have affected Plaintiff's mental capacity.

ject to Dr. Cover's testimony on the bases of "reliability, conjecture, improper methodology, and speculation." The Court agrees with Defendants at least with respect to paragraph eight of the Doctor's affidavit and does not consider it. However, the Doctor's statement regarding the general effect of Plaintiff's prescriptions on one's mental ability is unobjectionable. *See Halliburton*, 620 F.2d at 445; *Schultz v. Paradise Cruises, Ltd.*, 888 F.Supp. 1049 (D.Haw.1994). Plaintiff himself also states that his medications made him "agitated and confused" on July 27, 1999 when he was signing the settlement documents. Defendants disagree, pointing to Plaintiff's own testimony on that date, but Defendants' contention merely highlights that this issue presents a question of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (holding that courts should not resolve credibility issues in a motion for summary judgment). Additionally, Plaintiff has only a ninth grade education, is allegedly reading impaired and possesses an I.Q. of seventy (70). While not dispositive, these facts may nevertheless be relevant to a factual inquiry into mental capacity. *But cf. Borne*, 780 F.2d at 1257 (discounting the plaintiff's limited intelligence as not demonstrating lack of mental capacity). Moreover, Plaintiff's own conduct seems to suggest the possibility of a mental defect present on July 27, 1999. At the Release signing, Plaintiff spoke repeatedly about his fears stemming from a perceived harassment by Defendants. As discussed above, if Plaintiff is correct about this harassment, it may demonstrate coercion. Alternatively, if Plaintiff is flat out wrong about the facts, yet feared a series of imagined events, this might suggest a lack of mental capacity on the date in question.

Plaintiff levels some rather serious allegations at Defendants' conduct prior to and during the execution of this Release. Defendants' reply brief contends that Plaintiff has relied "upon utterly false and unreliable affidavit testimony" in his "attempt to create a fact issue." While the Court naturally advances no opinion re-

garding the veracity of Plaintiff's witnesses, it does note that the very nature of Defendants' reply, which attacks Plaintiff's credibility, further bolsters the Court's confidence in its conclusion that this matter is inappropriate for summary judgment. Here Plaintiff argues that he lacked the mental capacity to fully appreciate and understand the import of the document he was signing, and that moreover, the circumstances leading up to and surrounding the Release signing suggest possible overreaching, coercion or fraud on the part of Plaintiff's former employer. Plaintiff has introduced sufficient facts to create an issue of fact regarding the Release's validity. As such, Defendants' Motion for Summary Judgment is **DENIED.**

## III. CONCLUSION

Defendants have moved for Summary Judgment based upon a Release signed by the Plaintiff seaman. In response, Plaintiff has successfully established that disputed issues of material fact exist regarding the validity of this Release. Accordingly, for the reasons set forth above, Defendants' Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**