772 So.2d 828 (2000)
Odilon Chacha COTO; Ediberto Hernandez Hernandez; Emedelio H. Torres; Hector R. Gamas; Nelli R. Obando, et al.
v.
J. RAY McDERMOTT, S.A.; McDermott International, Inc.; The American Bureau of Shipping, Inc.; CCC Fabriones Y Constructiones, et al.
No. 99-CA-1866.
Court of Appeal of Louisiana, Fourth Circuit.
October 25, 2000.
Maury A. Herman, Brian D. Katz, David K. Fox, Herman, Herman, Katz & Cotlar, L.L.P., New Orleans, Louisiana and Samuel R. Palermo, O'Quinn & Laminack, Houston, Texas and Randy J. Ungar, Ungar & Byrne, New Orleans, LA, Counsel for Plaintiffs/Appellants.
Edward J. Koehl, Jr., Ann Allen Arceneaux, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, *829 Louisiana, Counsel for Defendants/Appellees.
Court composed of Judge WILLIAM H. BYRNES, III, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY, Judge Pro Tem. PATRICK M. SCHOTT.
PATRICK M. SCHOTT, Judge Pro Tem.
Plaintiffs have appealed from summary judgments dismissing their Jones Act and general maritime claims on the basis of releases executed by them in favor of defendants (hereinafter McDermott). The issue is whether the evidence of record shows that there is no genuine issue of material fact to support the conclusion that plaintiffs executed valid seaman's releases according to the standards set out in Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).
Plaintiffs are eleven divers from a crew of twenty divers who were aboard a barge in Mexican waters on October 15, 1995, when it sank in a storm. They were rescued and sent home at the expense of their employer, McDermott. On October 27 McDermott held a meeting with plaintiffs to discuss settlement of their claims and hosted a banquet to celebrate plaintiffs' survival. On the next day ten of the divers including six of the plaintiffs met separately with McDermott's attorney and settled their claims for $75,000 each. The remaining plaintiffs settled their claims between October 30 and January 30, 1996.
At the October 27 meeting, Don Terry, manager of McDermott's Diving Division made a lengthy presentation to the divers which was preserved on videotape. The subject was payment of compensation to the divers in settlement of any claims by those who had not sustained physical injury. Plaintiffs' version of that presentation is that it contained threats, misrepresentations, and promises of reward that coerced and misled them and left them ignorant of their rights. On the other hand, McDermott views the presentation as a fair, complete, even-handed, and objective outline of all the options available to plaintiffs with a complete and objective explanation of their rights. After the presentation, Terry had the divers meet privately to discuss their claims among themselves. They withdrew and selected a spokesman from their number. They concocted a settlement figure of $500,000 each which their spokesman relayed to Terry and which he rejected. In the meantime the divers learned from J. J. Riddle, another McDermott representative, that McDermott's deductible was $1.5 million. They surmised that McDermott would settle for this total amount among the twenty divers or $75,000 each. After further discussion between representatives of the divers and McDermott, the latter's advised that they would pay $75,000 to each diver interested in settlement. The spokesman reported that at least half of the divers would accept the settlement.
Later that evening McDermott hosted the survival celebration banquet for the dive crew. Following the banquet, the men continued to celebrate with drinking in Terry's hotel room and at French Quarter bars until the early hours of October 28, 1995. Later that day six of the plaintiffs met separately with McDermott's attorney and settled their claims for $75,000 each. Each meeting was recorded on videotape. Defendants contend that the videotapes prove that plaintiffs had a complete understanding of what they were doing and that they intelligently and freely entered into the settlements. Plaintiffs contend the videotapes prove that they were unfairly led or forced into settlements they did not understand and that they needed their own lawyers to advise them. They also argue that their mental ability was impaired as a result of the all-night partying and drinking the night before, but McDermott argues that the videotapes disprove this argument.
In Stalnaker v. McDermott Inc., 505 So.2d 139 (La.App. 4 Cir.1987) this court reviewed a summary judgment that dismissed *830 a seaman's suit on the basis of a release he had given to the defendant. The court recognized that the substantive law applicable to the validity of a seaman's release is from federal admiralty jurisprudence, but the procedural device of summary judgment is governed by Louisiana law. In Garrett v. Moore-McCormack Co., supra, the United States Supreme Court provided the following legal standard governing the validity and enforce-ability of an unrepresented seaman's release:
The burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.
In Stalnaker, supra, at 140, this court elaborated on pertinent federal maritime law as follows:
It is well settled that releases are signed by seamen are given the most careful scrutiny. Halliburton v. Ocean Drilling and Exploration, 620 F.2d 444 ([5th Cir.]1980). The support for this principle can be found as early as 1823 wherein Justice Story, sitting on the Circuit, stated:
"They [seamen] are emphatically the wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner as courts of equity accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees." Harden v. Gordon, 11 Fed Cas. At 485 (1Cir. 1823).
Subsequent jurisprudence has termed the release of a seaman precarious, at best, and has clearly laid the burden on the party seeking to uphold the release to show that it was given with an informed understanding by the seaman and an appreciation of the consequences of the release. Cates v. United States of America, 451 F.2d 411 (5th Cir.1971). A release is not valid unless it has been executed without deception or coercion. Charpentier v. Fluor Ocean Services, Inc., 534 F.2d 71 (5th Cir.1976). On a motion for summary judgment predicated on a seaman's release, the Federal jurisprudence has placed a heavy burden on the shipowner for he must conclusively demonstrate the absence of genuine issues of material fact. Halliburton, supra.

A summary judgment is appropriate only when there is no genuine issue as to material fact. LSA-C.C.P. Art. 966 (B). In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Oakley v. Thebault, 684 So.2d 488, 490 (La.App. 4 Cir.1996). A summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
Defendants rely heavily on the videotape of Don Terry's presentation to the divers at the October 27 meeting. As mentioned above each side of this lawsuit argues that the videotape supports its position. This very fact compels the conclusion that the use of the videotape necessarily includes a judgment that Terry was or was not credible, he was or was not being entirely objective, and that he was perceived by his listeners as fair and evenhanded or threatening and coercive. These are all subjective reactions by his listeners which must be evaluated in determining what effect is to be given to the presentation. This is fact finding. It constitutes a weighing of evidence and an evaluation of credibility. It is clearly not the stuff out of which a summary judgment is to be made. The same is true of the videotapes made of the men when they were given the releases by McDermott's *831 attorney. McDermott argues that these show that the men understood what they were doing. This is a question to be resolved by the trier of fact. The subjective state of the minds of these men is surely a genuine issue of fact. Indeed, a fair reading of the reasons for judgment by our esteemed brother below demonstrates that findings of fact were implicit in his reasons. For example, he stated, "...after reviewing the evidence, the Court is of the opinion that these individuals were not improperly influenced or coerced by any of the events which preceded the signing of the Receipt and Releases, including any representations made to the divers by their supervisor, Don Terry." He also stated that the videotapes indicate that the documents were executed freely and with full understanding of the individuals' rights. Such observations are typical of a judge in the role of the trier of fact, but they do not support the application of a summary judgment.
An additional problem with McDermott's case is its failure to show that the consideration for the releases was adequate. In the Garrett case the court stated that this was "relevant" to an appraisal of the seaman's understanding of his rights. In this court McDermott argues that the amount paid to each plaintiff was in excess of his annual wage, and while that may be a factor to consider it is not the only one. The question is whether each plaintiff could make an intelligent evaluation of his claim as seen by a judge or jury after a trial and an intelligent estimate as to the length of time which would transpire before his case ripened into a final judgment and his chances for success in the case. These are some of the factors that bear upon the adequacy of any settlement. In any event this is a genuine issue of material fact which precludes summary judgment in this case.
Accordingly, the summary judgments rendered herein are reversed and set aside and the case is remanded to the trial court for further proceedings. All costs of this appeal are assessed against McDermott. The assessment of other costs shall await the outcome of the case.
REVERSED AND REMANDED.
McKAY, J., DISSENTS WITH REASONS.
McKAY J., dissenting with reasons.
I respectfully dissent from the majority's opinion and would affirm the trial court's grant of summary judgment.
Given the risks of litigation, a seaman's release may not be set aside where the amount of the settlement is not clearly inadequate, as the seaman must live with the benefit of his bargain. Durden v. Exxon Corp., 803 F.2d 845 (5th Cir.1986). While the adequacy of consideration is relevant, the primary concern is whether the seaman has received what the court believes to be an adequate consideration. Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599, 606 (5th Cir.1986), citing Bass v. Phoenix Seadrill/78 Ltd., 749 F.2d 1154, 1161 (5th Cir.1985).
In the instant case, each of the appellants met with McDermott's legal representatives and agreed to settle his claim against the appellees for $75,000.00 (the sum was $85,000.00 for Ordwayne Chauvin). The settlement amount was not an arbitrary figure proposed by McDermott but a figure sought by the plaintiffs after McDermott refused their initial demand. The sum of $75,000 was also greater than the annual net income of any of the plaintiffs. This figure does not appear to be clearly inadequate.
Furthermore, the meetings were video taped. The video tapes show the attorneys for McDermott providing each seaman with a thorough and detailed explanation of his legal rights including a discussion of the physical and emotional condition of each, his right to recover damages for physical and emotional injuries, and his release of claims for all injuries including those that might arise later. *832 The plaintiffs were also told they were under no pressure to settle their claims; several members of the dive crew did in fact return to work before settling their claims. The plaintiffs were all experienced commercial divers and many of them had served in the military. They ranged in age from twenty-six to forty-nine. A number of them had even attended some college. Considering these factors, it appears that the members of the dive crew had an informed understanding of what they were doing.
I believe that the defendants' summary judgment evidence satisfied the burden of establishing that each seaman freely and voluntarily executed his release with a full understanding of his rights as well as the consequences of the releases. Accordingly, I would affirm the trial court's granting of summary judgment.