TERRI F. LOVE, Judge.
It This appeal arises from the personal injury and death of J.C. Williams from asbestos-related lung cancer, asbestosis and/or other complications. J.C. Williams and his wife filed a petition against multiple defendants seeking damages from alleged asbestos exposure. After the death of J.C. Williams and multiple motions for summary judgment, the trial court dismissed two defendants, held that punitive damages were not permitted, and denied a partial motion for summary judgment regarding the applicability of comparative fault. The trial court certified all of its judgments as final and appealable. We find that the trial court erroneously made a finding of fact in determining that comparative fault principles do not apply to the case sub judice. Therefore, we grant the defendants’ writ. We find that the trial court erred by granting summary judgment in regards to the applicability of punitive damages due to the need to evaluate subjective facts for proper adjudication. Additionally, we find that the trial court erred by granting Union Carbide Corporation’s motion for summary judgment regarding causation because genuine issues of material fact exist as to whether it exposed J.C. Williams to asbestos and if the exposure was a substantial contributing factor. We also find that the trial court erred in granting Dow’s partial motion for summary judgment ^regarding causation. Therefore, we reversed and remand for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

J.C. and Betty Williams (collectively “Plaintiffs”) filed a petition for damages, which alleged that Mr. Williams was exposed to various sources of asbestos at the workplace between 1980 and 1998, against Riley Power Incorporated (“Riley”); Bucy-rus International, Incorporated (“Bucy-rus”); Dow Chemical Company (“Dow”); Entergy Louisiana, LLC (“ELL”); Enter-gy New Orleans, Incorporated (“ENOI”); Foster Wheeler, LLC (“Foster”); General Electric Company (“GE”); Shell Chemical Company (“Shell Chem”); Shell Oil Company (“Shell”); CBS Corporation (“Westinghouse”); and Union Carbide Corporation (“UCC”). Shell Chem filed an answer and an exception of no cause of action because the Plaintiffs’ petition allegedly incorrectly named a company that does not exist and asserted that the real name of the company was Shell Chemical LP. Exceptions were also filed on behalf of UCC, Dow, ELL, ENOI, and Shell. Mrs. Williams then filed a supplemental and amended petition, following Mr. Williams’ death, adding their two children as plaintiffs. The petition also included survival and wrongful death claims. The Plaintiffs’ *500 second supplemental and amended petition included ANCO Insulations, Incorporated (“ANCO”) as an additional defendant.
UCC, Foster, Dow, Bucyrus, Riley, and Shell filed a joint motion for summary judgment alleging that comparative fault principles apply to the Plaintiffs’ claims, that punitive damages are not permitted, and that the Plaintiffs’ could not meet their burden of product identification and causation. The Plaintiffs’ filed an opposition, which contained a statement that they dismissed claims for punitive damages against Bucyrus.
|,^Following a hearing on the motion, the trial court granted the motion for summary judgment regarding UCC and Dow, which dismissed them as parties. The motion for summary judgment regarding causation was denied as to all other defendants. The trial court further denied the partial motion for summary judgment regarding punitive damages, finding that there was no evidence of a wanton and reckless disregard for public safety in the storage, handling, and transportation of asbestos. Then, the trial court certified all of the judgments as final and appealable pursuant to La. C.C.P. art. 1915.
After the trial court’s judgment, ELL and ENOI filed a motion for joinder in the partial motion for summary judgment on punitive. damages and comparative fault, alleging that they were inadvertently omitted from the original motion for summary judgment. The trial court granted the motion for joinder. The trial court then issued a judgment denying the partial motion for summary judgment by ELL, ENOI, and ANCO in regards to both punitive damages and comparative fault. However, the trial court issued a corrected judgment the next day, which, as to UCC, Foster, Dow, Bucyrus, Riley, Shell, ELL, ENOI, and ANCO (collectively “Defendants”) granted the partial motion for summary judgment holding that punitive damages were not applicable to the case sub judice and denied the partial motion for summary judgment holding that the law of comparative fault was not applicable. The judgment was also certified as final and appealable.
The Defendants’ motion and order for a devolutive appeal of the last judgment followed. The Defendants allege that the trial court erred in finding that comparative fault does not apply because all of Mr. Williams’ alleged exposures to asbestos occurred after the passage of Louisiana’s Comparative Fault Act in 1980, which made comparative fault law applicable, as opposed to pre-1980 |4virile share principles.
The Plaintiffs also filed an order for a devolutive appeal of the first judgment dismissing Dow and UCC and of the last judgment regarding punitive damages. The Plaintiffs assert that the trial court erred in dismissing Dow and UCC and that the doctrine of punitive damages should apply.

STANDARD OF REVIEW

A motion for summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). “The burden of proof remains with the movant.” La. C.C.P. art. 966(C)(2). “[I]f the movant will not bear the burden ■ of proof at trial ... the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(C)(2). Instead, the mover must point out to the court that there is an absence of factual support for one or more elements *501 essential to the adverse party’s claim, action, or defense. La. C.C.P. art. 966(C)(2). Afterwards, if the non-moving party “fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966(C)(2).
Rulings on motions for summary judgment are reviewed employing the de novo standard of review. Orleans Parish Sch. Bd. v. Lexington Ins. Co., 11-0009, p. 8 (La.App. 4 Cir. 10/5/11), 76 So.3d 592, 597. “In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Coto v. J. Ray McDermott, S.A., 99-1866, p. 4 (La. App. 4 Cir. 10/25/00), 772 So.2d 828, 830. Is See also Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 16 (La.2/29/00), 755 So.2d 226, 236. “As this court has explained, a ‘genuine issue’ is a ‘triable issue,’ or one as to which reasonable persons could disagree.” Hogg v. Chevron USA, Inc., 09-2632, p. 6 (La.7/6/10), 45 So.3d 991, 997, quoting Champagne v. Ward, OS-3211, p. 5 (La.1/19/05), 893 So.2d 773, 777. A fact is material when “the existence or non-existence of which may be essential to a cause of action under the applicable theory of recovery.” Id. “A summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith.” Coto, 99-1866, p. 4, 772 So.2d at 830.

COMPARATIVE FAULT

The Defendants contend that the trial court erred in denying their partial motion for summary judgment regarding the applicability of comparative fault principles.

La. C.C.P. art. 1915(B)(1) Certification

The Court first notes that the Defendants seek appellate review of a denial of a partial motion for summary judgment, which is an interlocutory judgment. The trial court certified the judgment as final and appealable pursuance to La. C.C.P. art. 1915(B)(1). However, “[a]n interlocutory judgment is appealable only when expressly provided by law.” La. C.C.P. art. 2083(C). “An appeal does not lie from the court’s refusal to render any judgment on the pleading or summary judgment.” La. C.C.P. art. 968. Therefore, “the denial of a summary judgment cannot be certified as final and appealable.” Safeguard Storage Props., L.L.C. v. Donahue Favret Contractors, Inc., 10-0673, p. 20 (La.App. 4 Cir. 3/31/11), 60 So.3d 110, 123. Although the transcript contains a discussion between the trial court judge |6and the attorneys as to whether there was no just reason for delay,[1] the judgment remains interlocutory. See Yokum v. Van Calsem, 07-0676, pp. 5-7 (La.App. 4 Cir. 3/26/08), 981 So.2d 725, 730.
This Court is not time-barred from converting the Defendants’ appeal into an application for supervisory review if the motion for devolutive appeal was filed within thirty days of the notice of judgment. Rule 4-3, Uniform Rules — Courts of Appeal. As both motions for appeal were filed within a few days of the notice of judgment, which was well within the thir *502 ty-day time delay for filing an application for supervisory review, we are not time-barred from conversion of the appeal. Therefore, we exercise our discretion and convert the Defendants’ devolutive appeal into an application for supervisory review and consider the merits.

Merits

The Defendants allege that the trial court erred in denying their motion for summary judgment requiring the application of comparative fault principles at a trial on the merits.
All of Mr. Williams’ alleged exposures to asbestos occurred after 1980 and he passed away in 2009. It is undisputed that Mr. Williams’ alleged asbestos exposures took place after Louisiana’s comparative fault regime became effective. Therefore, because the law of comparative fault applies, we find the Plaintiffs’ assertions regarding the applicability of La. C.C. art. 1789 and La. C.C. art. 1815 are without merit.[2]
| yHowever, the trial court found that the exposures allegedly caused by the Defendants could not be separated in order to apply comparative fault principles. In fact, the trial court stated in its reasons for judgment that “the court finds that that [sic] damages caused by any one defendant cannot be separated from the entire harm allegedly suffered by Mr. Williams.” The trial court further stated that “due to the nature of asbestos-related disease, this court finds that the damages caused by any one defendant cannot be separated from the entire harm that the plaintiffs have allegedly suffered.” La. C.C. art. 2323 and 2324 require that fault be apportioned amongst all of the parties adjudged at fault by the factfinder.[3]
*503 We find that instead of determining the applicability of comparative fault as a legal question, the trial court weighed the evidence presented in the partial motion for summary judgment and opposition and made a factual finding that the Plaintiffs’ alleged damages cannot be separated by the appropriate factfinder, i.e., the jury. The trial court is precluded from making factual determinations on a | amotion for summary judgment. See Godfrey v. Boston Old Colony Ins. Co., 97-2569 (La.App. 4 Cir. 5/27/98), 718 So.2d 455, 457.
Accordingly, we find that the trial court made a factual determination that Mr. Williams’ alleged injuries are indivisible such that the comparative fault regime cannot apply. However, as stated above, the law of comparative fault applies and determining how to apply the law to the facts presented at trial is a question of fact for the jury. After weighing the testimony presented at trial, such as if he was exposed to asbestos and the length of time Mr. Williams was allegedly exposed by each defendant, the jury will then determine how Mr. Williams’ injuries can be separated in such a manner that fault may be apportioned. The factfinder will determine if the provisions of La. C.C. art. 2324(A) apply.[4] Accordingly, we grant the Defendants’ writ, reverse the trial court’s ruling, and remand for further proceedings.

PUNITIVE DAMAGES

The Plaintiffs aver that the trial court erred in granting the Defendants’ partial motion for summary judgment regarding the applicability of punitive damages.

La. C.C.P. art. 1915(B)(1) Certiñcation

While we converted the Defendants’ appeal of a denial of a partial motion for summary judgment into an application for supervisory review, the Plaintiffs’ appeal of the granting of a partial motion for summary judgment is procedurally proper. See La. C.C.P. art. 1915(B)(1).
| Merits
The Plaintiffs assert that the former version of La. C.C. art. 2315.3 applied to Mr. Williams’ alleged asbestos exposures that occurred between September 1, 1984, through April 16, 1996. The previous version of La. C.C. art. 2315.3 was effective September 3, 1984, and repealed April 16, 1996. The former statutory provision provided that a plaintiff could recover exemplary damages if he could prove:
(1) that the defendant’s conduct was wanton and reckless by proving that ‘the defendant proceeded in disregard of a high and excessive degree of danger, either known to him or apparent to a reasonable person in his position, or that the defendant engaged in ‘highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent;’ (2) that the danger created by the defendant’s wanton or reckless conduct threatened or endangered public safety; (3) that the defendant’s wanton or reckless conduct occurred in the storage, handling or transportation of hazardous or toxic substances; and (4) that the plaintiffs injury was caused by the defendant’s wanton or reckless conduct.
Bonnette v. Conoco, Inc., 01-2767, pp. 27-28 (La.1/28/03), 837 So.2d 1219, 1237, quoting Billiot v. B.P. Oil Co., 93-1118, pp. 16- *504 17 (La.9/29/94), 645 So.2d 604, 613. “The statute providing for exemplary damages for wanton and reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances must be strictly construed, as it imposes a penalty.” Grefer v. Alpha Technical, 02-1237, p. 9 (La.App. 4 Cir. 8/8/07), 965 So.2d 511, 518.
The terms wantonness or recklessness applies to conduct which is so far from a proper state of mind that it is treated in many respects as if harm was intended or so obvious that defendant must have been aware of the high probability that harm would follow.
10Adams v. Marathon Oil Co., 96-693, p. 3 (La.App. 5 Cir. 1/15/97), 688 So.2d 75, 77.
First and foremost, this Court held that punitive damages may not be recovered on a claim for wrongful death. Bailey ex rel. Brown v. Exxon Mobil Corp., 11-0177, p. 3 (La.App. 4 Cir. 8/31/11), 76 So.3d 53, 55, writ denied, 11-2131 (La.11/18/11), 75 So.3d 468. Therefore, this Court must examine whether the trial court was correct in denying the recovery of punitive damages as it relates to the Plaintiffs’ survival action.
In order to justify the application of punitive damages, the Plaintiffs attempt to restate all of Mr. Williams’ alleged asbestos exposures. Further, the Plaintiffs claim that the Defendants knew asbestos was dangerous and hazardous due to publications of the Occupational Health and Safety Administration (“OSHA”), and allege that the spraying of asbestos-containing insulation was banned. However, the trial court stated, in its reasons for judgment, that “the Plaintiffs have not produced any evidence that any of the Defendants showed a wanton and reckless disregard for public safety in the storage, handling, and transportation of asbestos.”
We find that the trial court erred. This Court referenced the necessity of evaluating the defendant’s state of mind, which the plaintiff is required to prove in order to recover punitive damages. Griffin v. Tenneco Oil Co., 531 So.2d 498, 500 (La.App. 4th Cir.1988). This Court further stated “[t]he statute does not require that the plaintiff prove some specific conduct on defendant’s part which constitutes wanton or reckless disregard for his safety.” Id. The Griffin Court also espoused that the plaintiff must prove that the “alleged acts and omissions of negligence were accompanied by a conscious indifference to eonse-quences |namounting almost to a willingness that harm to the public safety would follow.” Griffin, 531 So.2d at 501.
Hence, whether or not the Defendants acted in a wanton or reckless manner pursuant to La. C.C. art. 2315.3, is a question that lends itself to the interpretation of subjective facts such as intent, motive, malice, and knowledge of the Defendants. Under the facts and circumstances of the case sub judice, the applicability of punitive damages to the Plaintiffs’ survival action is a factual issue determined by the factfinders who will weigh the testimony presented at trial, to determine if and when Mr. Williams was exposed to asbestos. These findings of fact will then determine whether the exposures fall into the time period that La. C.C. art. 2315.3 was effective. Therefore, we find that the trial court erroneously granted the partial motion for summary judgment regarding punitive damages and reverse because genuine issues of material fact exist.
Foster alleges that La. C.C. art. 2315.3 does not apply to it, regardless of the remaining defendants, because the statute “was not intended to regulate the conduct of manufacturers in relation to the quality of the products they manufactured.” The Plaintiffs averred, in the petition, that Fos *505 ter was a “manufacturer, seller or distributor of asbestos or asbestos-containing products.” However, the Plaintiffs also contend and Mr. Williams testified in his deposition that Foster performed contracting work via representatives for equipment vendors at the Shell facility. A manufacturer of asbestos-containing products could also engage in La. C.C. art. 2315.3 activities. King v. E.I. Du Pont de Nemours, 850 F.Supp. 503, 507 (WD.La.1994). In King, the court rejected the idea of “broad shield” protection from the purview of La. C.C. art. 2315.3. Id. Therefore, we find that Foster’s argument of exclusion lacks merit.

jyucc

The Plaintiffs allege that the trial court erred in granting UCC’s motion for summary judgment regarding causation and dismissing their claims.
UCC contends that Mr. Williams only worked at Taft for a “very short period of time,” that he “did not work directly” with asbestos-containing materials, and that Plaintiffs’ failed to establish that Mr. Williams suffered bystander exposure.
Dr. Judd Shellito stated in his affidavit that “[a]ny and all exposures to asbestos would have been a significant contributing factor in J.C. Williams’ development of asbestosis and asbestos-related lung cancer.”
Mr. Williams worked at UCC’s Taft facility (“Taft”) on multiple occasions from 1988 to 1992, while employed by R and H Electric Company (“R & H”). Mr. Williams states in his perpetuated deposition testimony that he was exposed to asbestos insulation at Taft because he was working in and out at Taft on a frequent basis. Mr. Williams testified that he worked around asbestos insulation during three to four shutdowns and at least one turnaround at Taft because all of the craftsmen would work side-by-side. Mr. Williams stated that each shutdown lasted around two weeks and that a turnaround could up to last ninety days. During the turnarounds, Mr. Williams claimed that he was transported through areas where asbestos was being removed. Mr. Williams testified that he was exposed to old asbestos insulation when new insulation was installed. Overall, Mr. Williams stated that his duties at Taft varied, but that he did not handle asbestos-containing products.
Dr. Frank Parker, III, an industrial hygienist, testified that Mr. Williams was exposed to asbestos at Taft when old insulation was removed.
11RThaddeus Porada, a retiree from UCC, testified in his deposition that he possessed general knowledge regarding the turnarounds performed at Taft in the late 1980s and early 1990s. He claimed that the turnarounds would last between two to four weeks. Mr. Porada stated that Mr. Williams, as an electrician, would not have been permitted to walk through asbestos-containing insulation abatement because of barricades.
Glenn Miaño, another UCC retiree and former turnaround coordinator, testified in his deposition that “[n]o additional work would take place where asbestos abatement is taking place.” He further stated that the area would be “isolated.” As to working side-by-side with other craftsmen, Mr. Porada testified that “[i]f the work permit required isolation or if the hazards were great, then no, an electrician would not be in that area.” However, Mr. Miaño testified that he did not know Mr. Williams and could not say workers removing asbestos-containing insulation followed the proper procedures.
Dr. William Dyson testified that UCC was following or exceeding OSHA asbestos abatement standards to the best of his *506 knowledge. He further stated that signs and ropes should have told an electrician not to walk through an asbestos abatement. If anything was not labeled as containing asbestos, then workers had to presume the material contained asbestos and have it tested. When asked about an electrician’s possible asbestos exposure from walking through Taft, Mr. Porada opined that it would not equate with “any exposure that would be meaningfully — that would be meaningful above background.”
The trial court stated in the judgment that “the plaintiffs have failed to meet their burden of proving that it was more probable than not that Mr. Williams was exposed to asbestos containing products at the Taft facility in 1992.” The trial 114court further stated that the “plaintiffs lack sufficient evidence” that Taft “was a substantial contributing factor of the plaintiffs injury.”
Indeed, “the plaintiff bears the burden of proving that the defendants’ conduct caused asbestos exposure, and that the conduct was a substantial contributing factor of the plaintiffs injury.” Vodanovich v. A.P. Green Indus., Inc., 03-1079, p. 5 (La.App. 4 Cir. 3/3/04), 869 So.2d 930, 933. However, the record before us presents conflicting evidence regarding Mr. Williams’ alleged asbestos exposure at Taft. It is improper for the trial court to weigh evidence or make credibility determinations on a motion for summary judgment. Coto, 99-1866, p. 4, 772 So.2d at 830. Given the testimony of Mr. Williams wherein he states that he was exposed to asbestos as Taft, the expert testimony of Drs. Parker and Shellito, and the contradictory testimony presented by UCC, we find that the trial court erred in weighing the evidence presented. Juxtaposed testimony presents a genuine issue of material fact regarding whether UCC exposed Mr. Williams to asbestos and if that exposure was a substantial contributing factor to Mr. Williams’ injuries and death. Therefore, we reverse the trial court and remand for further proceedings.

DOW

The Plaintiffs aver that the trial court incorrectly granted Dow’s motion for summary judgment regarding causation.
Dow alleges that the trial court correctly granted its motion for summary judgment regarding causation because Mr. Williams’ evidence is primarily based upon hearsay. “Hearsay is a statement made out of court offered as evidence in court to prove the truth of the matter asserted by the statement.” La. C.E. art. 801. “According to LSA-C.E. art. 802, ‘[hjearsay is not admissible except as otherwise |15provided by this Code or other legislation.’” State v. Jones, 98-1055, p. 6 (La.App. 5 Cir. 2/23/99), 729 So.2d 95, 98. “Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability.” Id. However, the trial court must first determine the admissibility of evidence and it did not label the Plaintiffs evidence as hearsay in the judgment. La. C.E. art. 104(A) provides that:
Questions of admissibility generally. Preliminary questions concerning the competency or qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B. In making its determination it is not bound by the rules of evidence except those with respect to privileges.
If the trial court determines that the statements are hearsay, after consideration of *507 La. C.E. art. 801(D)(4),[5] the statements fall within the hearsay exceptions enumerated within La. C.E. art. 803. La. C.E. art. 803 provides that statements made under the following circumstances are not considered hearsay:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
(3) Then existing mental, emotional, or physical condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant’s then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the 11fiexecution, revocation, identification, or terms of declarant’s testament.
However, the admissibility of statements is determined by the trial court. Nonetheless, the Plaintiffs’ offered more than Mr. Williams’ deposition testimony on opposition to Dow’s partial motion for summary judgment.
Mr. Williams testified that he worked for R & H as a “tagalong” with Westinghouse at Dow’s Plaquemine facility performing several duties, which included preventative maintenance. Mr. Williams stated that all trades were working side-by-side “in one spot and working together.” Simply, he testified: “[s]o in most cases this is where that exposure would come through, where everybody is piled up working together.” Mr. Williams did not allege that he personally handled insulation products. Instead, Mr. Williams opined that he was exposed to asbestos as he passed other craftsmen. Mr. Williams testified that he knew he was exposed to asbestos from speaking with other workers. While Mr. Williams was aware of safety procedures, he stated that “[i]t doesn’t always work out” and “[sjometimes it does happen where you walk through areas that are contaminated.”
Dr. Parker also believed that Mr. Williams was exposed to asbestos while working at Dow. Dr. Parker testified that Mr. Williams most likely sustained exposure at Dow because of working in the vicinity of other crafts, like “insulators ripping out asbestos.” Dr. Parker stated that although safety procedures were in place, that “from years of practice of having a procedure is not proof they’re followed.”[6]
117Bradley Rabalais, an employee of Dow in Plaquemine, testified that the insulation was “unlikely” asbestos because of the pro *508 cedures and policies in place at the facility. Mr. Rabalais also stated that it would have been a violation of standards if Mr. Williams worked side-by-side with workers removing asbestos insulation. Mr. Raba-lais testified that some areas of Dow still contain asbestos.
Roger Hudson, a retired Dow employee, testified that insulation was considered to contain asbestos until proven otherwise. Like Mr. Rabalais, Mr. Hudson stated that working side-by-side with insulators in the 1990s would have violated standards in place. Further, Mr. Hudson testified that it was “extremely improbable” that Mr. Williams was exposed to asbestos in 1998. Mr. Hudson stated that he had no personal knowledge of Mr. Williams’ work at Dow.
Leroy Balzer, Dow’s industrial hygienist, testified that materials were treated as asbestos-containing until proven otherwise. Most notably, Mr. Balzer stated that:
I do not find that Mr. Williams’ allegations of exposure to asbestos at Dow have any scientific basis nor could an allegation of occupational exposure attributable to Dow be validated to a reasonable degree of scientific probability.
Dow contends that the Plaintiffs failed to present sufficient evidence to defeat its partial motion for summary judgment; however, the. Plaintiffs submitted the testimony of Mr. Williams and the expert opinion of Dr. Parker, which contradicts Dow’s testimony from Dow employees and an expert. While the Plaintiffs may have presented more evidence of asbestos exposure by other defendants, the trial judge acts as the gatekeeper and determines what evidence is admissible. Then, the factfinder must weigh the credibility of the evidence | isadmitted at trial to determine whether Mr. Williams was exposed to asbestos while working at Dow. Therefore, we find that the trial court erroneously granted Dow’s partial motion for summary judgment and reverse for further proceedings.

DECREE

For the above mentioned reasons, we find that the trial court erroneously made a factual finding as to the applicability of comparative fault principles and grant the Defendants’ writ. We find that the trial court erroneously granted the Defendants’ motion for summary judgment regarding the applicability of punitive damages due to the required analysis of subjective facts required for proper adjudication. Additionally, we find that the trial court erred by granting UCC’s motion for summary judgment regarding causation because genuine issues of material fact exist as to whether Mr. Williams was exposed to asbestos at Taft and Dow and whether the alleged exposure was a substantial contributing factor. Therefore, we reverse and remand for further proceedings.
WRIT GRANTED; REVERSED & REMANDED

. La. C.C.P. art. 1915(B)(1) provides:
When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, re-conventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

. La. C.C. art. 1789, Divisible and indivisible joint obligation, provides:
When a joint obligation is divisible, each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion. When a joint obligation is indivisible, joint obligors or obligees are subject to the rules governing solidary obligors or solidary obli-gees.
La. C.C. art. 1815, Divisible and indivisible obligation, provides:
An obligation is divisible when the object of the performance is susceptible of division. An obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division.

. La. C.C. art. 2323 provides, in pertinent part:
A. ' In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a non-party, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
La. C.C. art. 2324 provides, in pertinent part: A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfea-sor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. *503 23:1032, or that the other person's identity is not known or reasonably ascertainable.

. The Plaintiffs assert in that the provision in La. C.C. art. 2324(A) is applicable, which would make the defendants found liable for Mr. Williams’ death "answerable, in solido.” La. C.C. art. 2324(A).

. La. C.E. art. 801(D) provides, in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.

. La. C.E. art. 703 provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.